UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLOS RAMIREZ et al.,

    Plaintiffs,

v.                       Case No.:  8:12-cv-02819-T-27EAJ

GRADY JUDD et al.,

    Defendants.

_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Dismiss (Dkt. 6), to which Plaintiffs have responded in opposition (Dkt. 9). Upon consideration, the motion (Dkt. 6) is GRANTED *in part* and DENIED *in part*.

I.    **INTRODUCTION**

Deputies Burgess and McLeod of the Polk County Sheriff's Office were dispatched to the home of Plaintiffs Carlos and Jasmaine Ramirez after a domestic altercation (Dkt. 1 ¶¶ 6, 14-15). Upon arrival, the deputies learned that Mr. Ramirez had left the house barefoot and shirtless (*id.* ¶¶ 12-13). After searching for about 45 minutes, the deputies found him returning to the house (*id.* ¶¶ 16-17).

Approaching from behind, Deputy McLeod positioned himself in front of Mr. Ramirez and, with his sidearm drawn, commanded him to "freeze" and "put your hands in the air" (*id.* ¶¶ 17-18). Mr. Ramirez stopped, raised his arms, and kept a cigarette he was smoking between his lips (*id.* ¶ 19). With his sidearm still drawn, Deputy McLeod instructed him to get rid of the cigarette (*id.* ¶ 20). Mr. Ramirez obeyed by turning his head to the right and spitting out the cigarette, while remaining

1

still and keeping his hands raised (*id.* ¶ 20). Unbeknownst to Mr. Ramirez, Deputy Burgess was moving around from behind to face him, and the cigarette "accidentally grazed" Deputy Burgess' uniform during its flight (*id.* ¶¶ 21, 22). Allegedly enraged by this, Deputy Burgess lifted Mr. Ramirez off the ground and slammed him onto a paved sidewalk, fracturing a bone and tearing muscles, tendons, and ligaments in Mr. Ramirez's leg (*id.* ¶ 23, 24, 27). After the takedown, while Mr. Ramirez lay "helpless" on the ground with a broken leg, Deputy McLeod placed his foot on Mr. Ramirez's head and applied "immense pressure" (*id.* ¶ 25).

Mr. Ramirez repeatedly requested transfer to a medical facility, but his requests were ignored (*id.* ¶¶ 26, 27). Three days after the arrest, Mr. Ramirez was permitted to see a nurse, who confirmed the injuries (*id.* ¶¶ 27). He eventually underwent knee surgery and will need additional surgery to repair the damage to his knee and leg (*id.* ¶¶ 30, 31).

Mr. Ramirez was initially charged with domestic battery[1] and resisting an officer without violence,[2] and later charged with battery against a law enforcement officer (*id.* ¶ 34). He entered a plea[3] to the charges of resisting and battery against a law enforcement officer (the domestic battery charge was dropped), and was sentenced to three years probation (*id.*). Mr. and Mrs. Ramirez then filed this suit alleging that the deputies used excessive force during the arrest.

The Complaint asserts nine causes of action against the deputies and Polk County Sheriff

---

[1]The Complaint alleges that Mr. Ramirez was "arrested for Battery-Touch or Strike (DV)" (Dkt. 1 ¶ 34). This allegation is insufficient to determine whether this was a felony or misdemeanor charge, because Plaintiffs do not allege whether Mrs. Ramirez suffered any injuries or whether Mr. Ramirez has previous convictions. *See* Fla. Stat. § 784.03(1)(b) (battery is a misdemeanor of the first degree); Fla. Stat. § 784.041(1)(b) (2008) (felony battery requires an intentional touching that "[c]auses great bodily harm, permanent disability, or permanent disfigurement"); Fla. Stat. § 784.03(2) (a person who has a prior conviction for battery and commits a second battery commits a felony of the third degree).

[2]*See* § 843.02, Fla. Stat. (2012) (Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person or the officer, shall be guilty of a misdemeanor of the first degree . . .").

[3]The Complaint does not detail what kind of plea.

2

Grady Judd. Count I seeks to impose vicarious liability on Sheriff Judd for the conduct of Deputies McLeod and Burgess. Count II asserts a cause of action under 42 U.S.C. § 1983 against Deputies McLeod and Burgess for using excessive force in violation of the Fourth and Fourteenth Amendments. Counts III through VI are state law assault and battery claims brought against Sheriff Judd and the deputies. Count VII is a cause of action for excessive force against Sheriff Judd, and Counts VIII and IX claim loss of consortium. Defendants move to dismiss the Complaint, arguing that they are entitled to qualified immunity and that Plaintiffs have failed to state claims on which relief may be granted.

## II.   STANDARD

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain enough facts to make a claim for relief plausible on its face." *Id.* at 1324-25. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Id.* "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

When a defendant raises the defense of qualified immunity in a motion to dismiss, the court must determine "whether the complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting [its] review to the four corners of the complaint." *Petithomme v. Cnty. of Miami-Dade*, No. 12-11118, 2013 WL 868610, at *2 (11th Cir. Mar. 8, 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)) (internal quotations omitted). Because "[q]ualified immunity is an immunity from suit rather than a mere defense to liability," the Supreme Court has repeatedly stressed the importance of resolving qualified immunity questions at the earliest possible stage. *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008); *see Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Dismissal under Rule 12(b)(6) is therefore appropriate "where the plaintiff has failed to allege a violation of a clearly established law." *Bloom v. Alvereze*, No. 11-14912, 2012 WL 5869383, at *8 (11th Cir. Nov. 19, 2012) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)); *see Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).

## III.   DISCUSSION

### A.   <u>Qualified Immunity</u>

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (internal quotations omitted). To obtain qualified immunity, an official must first establish that he acted within his discretionary authority. *Morton v. Kirkwood*, 707

F.3d 1276, 1280 (11th Cir. 2013). The parties do not dispute that Deputies McLeod and Burgess were acting within their discretionary authority.

The burden shifts next to the plaintiff to show that qualified immunity is not appropriate. *Galvez*, 552 F.3d at 1242; *Lee*, 284 F.3d at 1194. In this step, the plaintiff must first allege a constitutional violation. If he does not, the defendant is entitled to qualified immunity. If the plaintiff alleges the violation of a constitutional right, however, the defendant is still entitled to qualified immunity unless the right violated was clearly established at the time of the violation. *Galvez*, 552 F.3d at 1242. The key to this analysis is whether a reasonable officer, without the value of hindsight, would know that the allegedly offending conduct violates the Constitution. *Keating*, 598 F.3d at 762.

### 1.     *Fourth Amendment Violations Through Excessive Force*

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197. "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Nevertheless, the force used to effectuate an arrest must be "reasonably proportionate to the need for that force." *Id.* at 1198.

"In determining the reasonableness of the force applied, [courts] look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *Morton*, 707 F.3d at 1281 (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009)). Factors utilized to determine reasonableness include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Lee*, 294 F.3d at 1198. Additional considerations include the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in good faith or maliciously and sadistically. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).

In this case, Plaintiffs allege two constitutional violations. First, Plaintiffs allege that Deputy Burgess violated the Fourth Amendment by "lift[ing] Plaintiff off the ground and slamm[ing] him onto the paved sidewalk," which resulted in a broken leg and torn muscles, tendons, and ligaments (*see* Dkt. 1 ¶¶ 24, 27). Plaintiffs also argue that Deputy McLeod's failure to intervene is a violation of the Fourth Amendment. Defendants contend that the force used by Deputy Burgess was reasonable, and that Deputy McLeod did not have an opportunity to intervene.

### 2.    *Deputy McLeod*

Law enforcement officers commit a constitutional violation by failing to intervene when another officer uses excessive force. *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998)). This liability, however, only arises when the officer is in a position to intervene and fails to do so. *Id.* (citing *Ensley*, 142 F.3d at 1407). Drawing all inferences in favor of Plaintiffs, the Complaint does not allege that Deputy McLeod had an opportunity to intervene in Deputy Burgess' takedown. There are no allegations concerning the time span between contact with the cigarette and the use of force on Mr. Ramirez, and Plaintiffs do not make any other allegations from which an opportunity to intervene can be inferred.

Plaintiffs also allege that Deputy McLeod is liable for "pressing his shoe/foot against Mr. Ramirez's head while Mr. Ramirez laid incapacitated on the sidewalk" (Dkt. 1 ¶ 62), but this use of

*de minimis* force is not a constitutional violation. Fourth Amendment jurisprudence has long recognized that "the typical arrest involves some force and injury," *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (internal quotations omitted), and "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

In *Nolin*, the plaintiff filed a claim of excessive force against a police officer who "grabbed [the plaintiff] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin in an uncomfortable manner, and handcuffed him." 207 F.3d at 1255. The Eleventh Circuit determined the force used against Nolin "falls well within the ambit of the de minimis force principle," and granted the officer qualified immunity. *Id.* at 1258 n.4. Likewise, in *Croom v. Balkwill*, an officer used only *de minimis* force when he pushed the elderly and infirm plaintiff onto the ground and held her there with a foot or knee in her back for ten minutes. 645 F.3d 1240, 1252-53 (11th Cir. 2011).

Deputy McLeod applied equivalent, if not less, force than the officers in *Nolin* and *Croom*. Even accepting the allegation that he used "immense pressure," Plaintiffs do not allege that the force caused any injury or pain. *See McCall v. Crosthwait*, 336 Fed. Appx. 871, 873 (11th Cir. 2009) (bruising is the type of *de minimis* injury that does not give rise to an excessive force claim); *Wingster v. Head*, 318 Fed. Appx. 809, 815 (11th Cir. 2009) (plaintiff must show that more than a *de minimis* injury resulted to establish a claim for excessive force); *Nolin*, 207 F.3d at 1257 n.3 ("[A] court may conclude that an officer retains qualified immunity when the facts show a minimal amount of force combined with a minor or nonexistent injury."). Deputy McLeod used the kind of *de minimis* force that law enforcement officers are entitled to use when effectuating an arrest. Neither this *de minimis* force nor his failure to intervene is a constitutional violation. Deputy McLeod is

therefore entitled to qualified immunity.

### 3. *Deputy Burgess*

When Deputy Burgess used force to effectuate the arrest, Mr. Ramirez had stopped moving, surrendered, was obeying the deputies' commands, and posed no threat to the safety of the officers. There are no allegations that Mr. Ramirez was actively resisting arrest or attempting to flee. A reasonable law enforcement officer in that situation would not believe that anything more than *de minimis* force was warranted. Yet, Deputy Burgess used force sufficient to fracture bone and tear sinew. That force was excessive. *See Hadley*, 526 F.3d at 1330 ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (force sufficient to break the arm of arrestee who had "docilely submitted" to law enforcement is excessive, and officer not entitled to qualified immunity); *Thompson v. Mostert*, 489 Fed. Appx. 396, 397-98 (11th Cir. 2012) (officers used excessive force when deploying taser to arrest individual who was charged with obstructing justice without violence).

Nevertheless, Deputy Burgess would be entitled to qualified immunity if the right he violated by using excessive force was not clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds*, *Pearson*, 555 U.S. 223; *Galvez*, 552 F.3d at 1242. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Sometimes, "the words of the pertinent federal statute or federal constitutional provision . . . will be specific enough to establish clearly the law applicable to particular conduct." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). These kinds of cases are ones of "obviously clarity," involving conduct "far beyond the hazy border between excessive

8

and acceptable force." *Id.* at 1350 n.18. In such cases, the conduct is so bad that case law is not necessary to establish that the conduct cannot be lawful. *Id.* at 1350.

An officer's use of force sufficient to break a bone when an arrestee is not resisting is obviously unacceptable conduct. *See Smith*, 127 F.3d at 1419-20 (refusing to confer qualified immunity on an arresting officer who fractured the arm of the arrestee even though the arrestee had "dociley submitted" to the officers and was offering no resistance). Deputy Burgess caused serious injury requiring multiple surgeries, even though Mr. Ramirez had "dociley submitted" to the officers and was obeying their orders. Such conduct goes "far beyond the hazy border between excessive and acceptable force," and violates clearly established rights. *See also Priester*, 208 F.3d at 927 (concluding right was clearly established and force was clearly excessive when officer released police dog to attack plaintiff who was lying on the ground, did not pose a threat to officers, and was not attempting to flee). Deputy Burgess is not entitled to qualified immunity.

**B.    Count I - Sheriff Judd's Vicarious Liability**

Count I alleges that Sheriff Judd, in his official capacity, is vicariously liable for the actions of Deputies McLeod and Burgess. This is functionally a claim against Polk County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). This claim must be dismissed "since neither respondeat superior nor vicarious liability exists under § 1983." *Cook*, 402 F.3d at 1116.[4]

**C.    Count II - Excessive Force Against Deputies Burgess and McLeod**

Count II states a claim against Deputy Burgess under Section 1983 for the use of excessive

---

[4]Even if Plaintiffs could state a claim for vicarious liability, Count I would be dismissed because the Complaint does not detail what actions Sheriff Judd is alleged to be vicariously liable for, and it consists of only a formulaic recitation of the elements of vicarious liability under the doctrine of respondeat superior. *See Iqbal*, 556 U.S. at 679; *Resnick*, 693 F.3d at 1324.

force in violation of the Fourth Amendment. Deputy McLeod, however, is entitled to qualified immunity for his role in the arrest. Count II is therefore dismissed as to Deputy McLeod.

### D.     Counts III and IV - Assault

An essential element of assault is the plaintiff's well-founded apprehension or fear of immediate contact. *See Colony Ins. Co v. Barnes*, 189 Fed. Appx. 941, 943 (11th Cir. 2006); *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1315 (M.D. Fla. 2010); *Johnson v. Brooks*, 567 So. 2d 34, 35 (Fla. 1st DCA 1990). In order to fear the prospect of immediate contact, one must be aware of the threat prior to the actual contact. *See U.S. v. Acosta-Sierra*, 690 F.3d 1111, 1121 (9th Cir. 2012) ("[F]or a criminal assault based on causing the apprehension of imminent bodily injury, the common law requires awareness of the threat."); W. Page Keeton et al., *Prosser & Keeton on Torts* § 10, at 44 (5th ed. 1984) ("Since the interest involved is the mental one of apprehension of contact, it should follow that the plaintiff must be aware of the threat of contact, and that it is not an assault to aim a gun at one who is unaware of it."); *Rest. (2d) Torts* § 26 cmt. a (1965) ("The gist of the liability is the other's knowledge that the actor is attempting to commit a battery upon him."). When the plaintiff is unaware of the impending contact prior to the moment of touching, there is no assault. *See, e.g., Proffitt v. Ricci*, 463 A.2d 514, 517 n.5 (R.I. 1983).

Plaintiffs allege that Deputy Burgess became "enraged" and initiated contact with Mr. Ramirez "immediately" following contact with the cigarette (Dkt. 1 ¶ 23). While the conclusory allegation that Mr. Ramirez was in "reasonable imminent [f]ear of peril" (*id.* ¶ 60) is insufficient to allege the element of awareness, the allegations in Paragraph 23 permit the plausible inference that Mr. Ramirez was apprehensive of impending contact as soon as Deputy Burgess became "enraged." *See Iqbal*, 556 U.S. at 678 (discussing the line between possibility and plausibility of entitlement to relief).

The Complaint, however, fails to state a cause of action for assault with regard to the actions of Deputy McLeod. Under Florida law, law enforcement officers are liable in tort only when the force used in effectuating an arrest is "clearly excessive." *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006) (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)). As discussed previously, Deputy McLeod did not use "clearly excessive" force. *See Lau v. Miller*, No. 96-1219-CIV-ORL-22B, 1999 WL 34803669, at *7 (M.D. Fla. Sept. 16, 1999) (granting defendants judgment as a matter of law on assault claims where the defendants used reasonable force in effectuating the arrest of the plaintiff).[5]

## E.  <u>Counts V and VI - Battery</u>

Under Florida law, a battery is "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Barnes*, 189 Fed. Appx. at 943 (quoting *Paul v. Holbrook*, 696 So. 2d 1311, 1312 (Fla. 5th DCA 1997)). The tort of battery requires the plaintiff to prove "(1) the intent to cause a harmful or offensive contact with another person; and (2) an offensive contact that directly or indirectly results." *Rubio v. Lopez*, 445 Fed. Appx. 170, 175 (11th Cir. 2011) (citing *Chorak v. Naughton*, 409 So. 2d 35, 39 (Fla. 2d DCA 1981)). "Only when excessive force is used in an arrest is the protected use of force transformed into a battery." *Lau*, 1999 WL 34803669, at *7 (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)).

The Complaint sufficiently alleges battery against Deputy Burgess, and the allegations support the inference that Deputy Burgess acted in bad faith, with malicious purpose, or in a manner

---

[5]Counts III and IV survive as to the conduct of Deputy Burgess. Counts III and IV are properly pleaded in the alternative under § 768.28(9)(a), and the allegations support Plaintiffs' claims that Deputy Burgess acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, permitting Deputy Burgess to be sued individually in Count IV.

exhibiting wanton and willful disregard of Mr. Ramirez's safety. *See* Fla. Stat. § 768.28(9)(a) (permitting state officers to be sued individually when they acted in such a manner). The force used by Deputy McLeod, however, was not "clearly excessive" and the battery claims based on his actions fail.

**F.      Count VII - Excessive Force Against Sheriff Judd**

Governmental entities may be liable for excessive force when the alleged constitutional violations result from the execution of a policy or custom of the governmental entity. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). The policy or custom must be the "moving force" behind the constitutional deprivation. *Id.* Plaintiffs' conclusory allegations concerning policies and custom within the Polk County Sheriff's Office do not state a claim for excessive force against Sheriff Judd. *See Iqbal*, 556 U.S. at 678; *Resnick*, 693 F.3d at 1324 (complaint must plead all facts establishing an entitlement to relief with more than labels and conclusions).

**G.      Counts VIII and IX - Loss of Consortium**

Loss of consortium is a derivative claim dependent upon the existence of an actionable tort causing harm to the plaintiff's spouse. *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971); *see Gordon v. Berry*, 444 Fed. Appx. 427, 435 (11th Cir. 2011). Because tort claims against Deputy Burgess and Sheriff Judd survive, Plaintiffs' derivative loss of consortium claims also survive. Count IX is dismissed, however, as to Deputy McLeod because Plaintiffs have failed to state a cause of action against him to which a loss of consortium claim could attach.

Accordingly,

1) Defendants' Motion to Dismiss (Dkt. 6) is GRANTED *in part* and DENIED *in part*. The

claims against Deputy McLeod in Counts II, IV, VI, and IX are DISMISSED *with prejudice*.[6] Count I is DISMISSED *with prejudice*. Count VII is DISMISSED *without prejudice*. Counts III, V, and VIII are DISMISSED in part *with prejudice*, only to the extent that they cannot be based on the conduct of Deputy McLeod.

2) The Clerk is directed to ENTER partial final judgment in favor of Defendant Paul Allen McLeod.

3) Plaintiffs are GRANTED leave to file an amended complaint within **fourteen (14) days** of the date of this order. If an amended complaint is not filed, Defendants shall file an answer within **twenty-one (21) days** of the date of this order. If Plaintiffs file an amended complaint, a responsive pleading shall be filed within the time set forth in the Federal Rules of Civil Procedure.

**DONE AND ORDERED** this ___6th___ day of May, 2013.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[6]*See Cooper v. Rutherford*, No. 11-14722, 2012 WL 4856122, at *1 (11th Cir. Oct. 12, 2012) (remanding with instructions to dismiss complaint with prejudice where law enforcement officer is entitled to qualified immunity).