UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLOS RAMIREZ and JASMAINE
RODRIGUEZ RAMIREZ,

      Plaintiffs,

v.                                     Case No: 8:12-cv-2819-T-36EAJ

GRADY JUDD, WARNER ANTHONY
BURGESS and PAUL ALLEN MCLEOD,

      Defendants.
_____/

## ORDER

This matter comes before the Court upon the Defendants' Motion for Summary Judgment (Doc. 47), Plaintiffs' response thereto (Doc. 71), and Defendants' reply (Doc. 77).  In the motion, Defendant Burgess argues that he is entitled to qualified immunity with regard to Plaintiffs' claims for constitutional violations brought under 42 U.S.C §1983.  Defendant Burgess further argues that he is entitled to summary judgment on the tort claims for battery and assault because the force he used in arresting Plaintiff Ramirez was not clearly excessive. Defendant Judd contends that the claims against him are based upon the actions of Defendant Burgess and fail because Plaintiffs' § 1983 and tort claims against Defendant Burgess fail. The Court, having considered the motion and being fully advised in the premises, will deny Defendants' Motion for Summary Judgment.

## I.      STATEMENT OF MATERIAL FACTS[1]

On or about July 28, 2010 law enforcement officers with the Polk County Sherriff's Department ("PCSD") were dispatched to Plaintiffs' residence. Doc. 49 at 6:11-17. The officers

---

[1] The Court has determined the facts in the light most favorable to Plaintiff Carlos Ramirez based on the affidavits and deposition testimony.

were told that a very intoxicated male had battered his wife and that there were weapons, possibly a sword, in the house. *Id.* at 7:21 – 8:1; Doc. 50 at 13:5 – 14:1. Deputy McIntyre arrived at the residence first and began a search of the premises. Doc. 49 at 10:9-12. Deputies Burgess and McLeod arrived, separately, at the residence shortly after Deputy McIntyre. *Id.* at 10:9-12, 12:17-22; Doc. 50 at 19:6-10, 20:3-17. Plaintiff Carlos Ramirez was not at the residence when the officers began to arrive. Doc. 49 at 12:17-22; Doc. 50 at 20:23-24.

A canine unit was called to Plaintiffs' residence to assist with searching for Mr. Ramirez. Doc. 49 at 12:17-22. Deputy Schaub was the canine unit officer that responded to the scene. *Id.* at 12:2-24. Deputies Burgess, McLeod and Schaub began their canine-assisted search in Plaintiffs' backyard. *Id.* at 13:10-18. Within the hour the deputies spotted Ramirez in the street in front of a vacant lot. *Id.* at 15:7-12; Doc. 58 at 72:14-21. Deputy McLeod directed Mr. Ramirez to stop or freeze and Mr. Ramirez complied. Doc. 49 at 30:3-10; Doc. 58 at 39:22-40:4.

Deputies Burgess and McLeod approached Mr. Ramirez from behind. Doc. 49 at 27:17-20; Doc. 50 at 32:17-22; Doc. 58 at 40:18-25. Deputy Burgess detected the smell of alcohol on Ramirez. Doc. 50 at 37:8-38:6. One of the deputies had his gun drawn and in Mr. Ramirez's face. Doc. 58 at 40:18-25. Deputies Burgess and McLeod testified that Mr. Ramirez's hands were in the air when they approached him. Doc. 49 at 29:8-10; Doc. 50 at 35:3-7. Deputy McLeod asked Ramirez from whom he was running, and Ramirez answered, "You motherfuckers." *Id.* at 41:2-4. Mr. Ramirez was smoking a cigarette and one of the deputies told him to spit it out as he was being handcuffed behind his back by the other officer. Doc. 49 at 32:7-12, 33:7-34:20; Doc. 50 at 45:17-18; Doc. 58 at 41:6-9. Mr. Ramirez turned his head to the right and spit out the cigarette, which grazed Deputy Burgess' left sleeve. Doc. 50 at 48:5-24; Doc. 58 at 41:9-25. Mr. Ramirez did not see Deputy Burgess until after he had spit out the cigarette. *Id.* at 41:17-25. Deputy Burgess

then grabbed Mr. Ramirez by his torso and took Mr. Ramirez to the ground, severely injuring Mr.

Ramirez's right leg and scraping Mr. Ramirez's face on the road. Doc. 50 at 51:8-10; Doc. 58 at

41:23-42:2, 62:9-21, 63:4-64:6, 65:5-23. Mr. Ramirez's hands were in the air when he was thrown

to the ground. Doc. 49 at p. 31:5-10; Doc. 58 at 57:14-16. Mr. Ramirez testified that the gun was

in his face throughout the incident, until he was taken down. Doc. 58 at 41:6-16; 103:5-13; 104:21-

24. Deputy Burgess held Mr. Ramirez on the ground, with his knee on Mr. Ramirez's spine, and

handcuffed Mr. Ramirez. Doc. 58 at 67:10-14, 68:2-8. Deputy McLeod then put his foot on Mr.

Ramirez's head. *Id.* at 67:16-24. Mr. Ramirez was held on the ground until a police vehicle was

brought to the scene. *Id.* at 69:19-24. Mr. Ramirez's tibia was shattered by the takedown, and his

face was bleeding, bruised and swollen. *Id.* at 63:4-11, 65:5 – 66:16. Additionally, Mr. Ramirez

has tendons and ligaments in his leg that are torn beyond repair as a result of this incident. *Id.* at

64:2-6.

Deputy Burgess was not injured or burned by the cigarette. Doc. 50 at 58:8-12. Deputy

Burgess is 6'7" tall and Mr. Ramirez is 5'10" tall. *Id.* at 56:24 – 57:6; Doc. 58 at 8:4-5. Mr. Ramirez

entered into a plea agreement and pleaded *nolo contendre* to charges of resisting an officer without

violence and battery on a law enforcement officer in state court. *See* Doc. 59 at p. 11-16.

## II.   STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law" after

reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits. *See*

Fed. R. Civ. P. 56(a). Issues of fact are genuine only if "a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is

"material" if it may affect the outcome of the suit under governing law. *Id.*

In deciding a motion for summary judgment based on qualified immunity, the Court must resolve all issues of material fact in favor of the plaintiff. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). The facts are viewed in the light most favorable to the plaintiff because the legal issue of qualified immunity on summary judgment is "not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Id.* (*quoting Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998)). Although the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case[,]" for summary judgment purposes, all reasonable inferences from the facts are to be drawn in favor of the plaintiff. *Lee*, 284 F.3d at 1190 (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)). "Summary judgment is appropriate if 'the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *McCullough v. Antolini*, 559 F.3d 1201, 1204 (11th Cir. 2009).

## III.     DISCUSSION

Plaintiffs' Amended Complaint alleges nine counts against three defendants. *See* Docs. 1 and 69.[2] Count I was previously dismissed with prejudice and is not at issue here. *See* Doc. 17. Count VII, alleging violations of § 1983 by Sheriff Grady Judd, was dismissed without prejudice and not re-pleaded, so that count is not at issue here. *See id.* Additionally, all claims against Deputy McLeod have been dismissed. *See id.* Defendants Judd and Burgess have moved for summary judgment as to the remaining claims: Count II – section 1983 excessive force against Deputy Burgess; Count III – assault against Sheriff Judd; Count IV – assault against Deputy Burgess;

---

[2] Following the submission of Defendants' Motion for Summary Judgment, Plaintiff filed an Amended Complaint (Doc. 69) which asserted the same counts, in the same order, as the original Complaint (Doc. 1). The only difference between the two pleadings is the addition of references to the Fourth Amendment in the Amended Complaint.

Count V – battery against Sheriff Judd; Count VI – battery against Deputy Burgess; Count VIII – loss of consortium against Sheriff Judd; and Count IX – loss of consortium against Deputy Burgess.

### A.      Count II: Violation of § 1983 by Deputy Burgess

With regard to § 1983 claims, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   The standard for qualified immunity is well established.   First, the government official must show that he was engaged in a "discretionary function" when he committed the allegedly unlawful acts. *See Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1285 (11th Cir. 2009).   If the officials were not acting within the scope of their discretionary authority, then they are ineligible for the benefit of qualified immunity. *Id.*   If, however, the defendants meet the initial burden of establishing that they were acting within the scope of their discretionary authority, then the burden shifts to Plaintiff to show that qualified immunity is inappropriate. *Id.*

To establish that the challenged actions were within the scope of discretionary authority, the Defendants must show that those actions were: "(1) undertaken pursuant to the performance of [their] duties, and (2) within the scope of [their] authority." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006).   Here, Plaintiff does not dispute that Deputy Burgess was acting within the scope of his discretionary authority.

Accordingly, the burden shifts to Plaintiff to show that qualified immunity is inappropriate. To do so, the plaintiff must satisfy the two-pronged test articulated by the Supreme Court in

*Saucier v. Katz*, 533 U.S. 194, 201 (2001), by presenting factual evidence showing (1) Deputy Burgess violated a constitutional right, and (2) this right was clearly established at the time of the violation. "Clearly established" means that it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id.* Therefore, the question for this Court in assessing Deputy Burgess' immunity from damages under § 1983 is whether Plaintiff has established the violation of a clearly established constitutional right. *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

### 1.    Was there a constitutional violation?

The use of excessive force in making an arrest constitutes a violation of the Fourth Amendment. *See Davis v. Williams*, 451 F.3d 759, 767 (11th Cir.2006). Whether the amount of force used was reasonable or excessive is determined objectively "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight" and requires "careful attention to the facts and circumstances of each particular case." *Priester*, 208 F.3d at 924 (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The factors to be analyzed include: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Priester*, 208 F.3d at 924; *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005). The totality of the circumstances are considered "to determine whether the manner of arrest was reasonable." *Draper v. Reynolds*, 369 F.3d 1270, 1277 (11th Cir.2004). "[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Id.* at 1277–78 (quoting *Lee*, 284 F.3d at 1198). The force exerted by the officer must be "reasonably

proportionate to the need for that force" which is measured by the three factors set forth in *Priester*. *Lee*, 284 F.3d at 1198.

When Deputy Burgess used force to effectuate the arrest here, Mr. Ramirez had already stopped moving, had surrendered, was obeying the deputies' commands, and posed no threat to the safety of the officers. In fact, by taking Ramirez to the ground, Deputy Burgess interrupted another officer, Deputy McLeod, who was handcuffing Mr. Ramirez. Ramirez was being arrested for a misdemeanor offense, domestic violence – battery. The undisputed facts show that Ramirez followed every command the deputies gave him, including the command to spit the cigarette out.[3] Ramirez could not use his hands to take the cigarette out of his mouth because his hands were either in the air or being held behind his back from the time he was initially stopped until the takedown. There are no allegations that Mr. Ramirez was actively resisting arrest or attempting to flee. Ramirez did not attempt to fight, kick, hit, or swing at the deputies. He was compliant with the deputies' commands. The evidence, in the light most favorable to Ramirez, indicates that Ramirez did not pose a threat to the safety of the officers or others.

A reasonable law enforcement officer in this situation would not believe that anything more than *de minimis* force was warranted. Yet, Deputy Burgess used force sufficient to break bones and tear ligaments.[4] That force was excessive. *See Saunders v. Duke,* 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is

---

[3] A dispute exists as to whether Ramirez intentionally spit the cigarette at Deputy Burgess. Ramirez testified that he turned his head to the right and spit out the cigarette. Deputy Burgess testified that Ramirez intentionally spit the cigarette at him.

[4] A dispute exists as to the manner of the takedown. Robert Scott, Ramirez's neighbor, viewing the incident from his home several feet away, testified that Ramirez was gently brought down. Ramirez's treating physician, Dr. Stanislaw Zemankiewicz, testified that the type of injuries Ramirez received come from high impacts, such as that resulting from skating, cycling, or falling off of a tree.

denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997) (force sufficient to break the arm of arrestee who had "docilely submitted" to law enforcement is excessive, and officer not entitled to qualified immunity); *Thompson v. Mostert,* 489 Fed. Appx. 396, 397-98 (11th Cir. 2012) (officers used excessive force when deploying Taser to arrest individual who was charged with obstructing justice without violence).

2.      *Was the right clearly established?*

The relevant inquiry to determine whether a right is clearly established is to ask whether it would be "sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Oliver v. Fiorino,* 586 F.3d 898, 907 (11th Cir. 2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  In making this inquiry, the precedent of the Supreme Court of the United States, the Eleventh Circuit, and the Florida Supreme Court is considered.  *See McClish v. Nugent,* 483 F.3d 1231, 1237 (11th Cir.2007).  "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  *Priester,* 208 F.3d at 926 (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).  However, if a plaintiff establishes "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw," then the official will not be entitled to qualified immunity. *Id.*

An officer's use of force sufficient to break a bone when an arrestee is under the control of another officer and is not resisting is obviously unacceptable conduct. *See Smith,* 127 F.3d at 1419-

20 (refusing to confer qualified immunity on an arresting officer who fractured the arm of the arrestee even though the arrestee had "docilely submitted" to the officers and was offering no resistance). Deputy Burgess caused serious injury requiring multiple surgeries, even though Mr. Ramirez had "docilely submitted" to the officers, was obeying their orders, and was being handcuffed by another officer. Such conduct goes "far beyond the hazy border between excessive and acceptable force," and violates clearly established rights. *See also Priester,* 208 F.3d at 927 (concluding right was clearly established and force was clearly excessive when officer released police dog to attack plaintiff who was lying on the ground, did not pose a threat to officers, and was not attempting to flee).

Defendants suggest that two recent unpublished cases from the Eleventh Circuit mandate a finding that the right was not clearly established: *Harper v. Davis,* 571 Fed. Appx. 906 (11th Cir. 2014) and *Wordley v. San Miguel*, 567 Fed. Appx. 719 (11th Cir. 2014). However, there is a crucial difference between this case and the facts presented in *Harper* and *Wordley*: Here, the plaintiff was already under control of one officer when the force was used by another officer. Deputy Burgess had no need to even touch Mr. Ramirez because he was being handcuffed by Deputy McLeod without difficulty. The spitting of the cigarette had no effect on Deputy McLeod's control over Mr. Ramirez and, if Deputy Burgess had stayed back, the arrest would likely have been completed without any use of force. It should be clear to any law enforcement officer that interrupting the peaceful handcuffing of a suspect simply to exert force is a violation of a clearly established right. *See, e.g., Rosa v. City of Fort Myers*, Case No. 2:05-cv-481-FtM-29SPC, 2007 WL 3012650 (M.D. Fla. Oct. 21, 2007) (denying motion for summary judgment on basis of qualified immunity when force was used by one officer while plaintiff was cooperating and complying with another officer's instructions); *Williams v. City of Daytona Beach*, Case No. 6:04-

cv-1879-Orl-19KRS, 2006 WL 354635, 14 (M.D. Fla. Feb. 15, 2006) ("Because Plaintiff has testified that the officers applied a substantial amount of force while he posed no threat to the safety of the officers or others and there was no necessity for the use of such force, the Court cannot grant summary judgment on Plaintiff's allegation that Defendant officers used excessive force after Plaintiff was arrested."); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (finding that officers used excessive force where witnesses testified that the plaintiff did not struggle or resist the officers in any way and that the officers kicked him in the ribs and beat his head on the ground while the plaintiff was handcuffed).

The parties have submitted conflicting expert testimony regarding the reasonableness of the force used by Deputy Burgess.[5]  A reasonable fact finder could determine that Deputy Burgess used excessive force when arresting Ramirez. The evidence before this Court, viewed in the light most favorable to Plaintiff Ramirez, supports a finding that Deputy Burgess used excessive force and thereby violated Plaintiff Ramirez's constitutional right. The right to be free of excessive force by law enforcement officers during an arrest is clearly established. Because Deputy Burgess' conduct violated a clearly established constitutional right of which a reasonable person would have known, he is not entitled to qualified immunity.

### 3.     *Ramirez's Plea Agreement*

Defendants argue that Ramirez cannot recover under § 1983 because he "pled guilty to intentionally spitting the cigarette." Doc. 47 at p. 8. However, Ramirez did not plead guilty – he pleaded *nolo contendre*. *See* Doc. 59 at p. 16. "While a *nolo* plea is indisputably tantamount to a

---

[5] Plaintiff's expert, Charles Drago, testified that the takedown was unnecessary because Ramirez had his hands up at the time. *See* Doc. 53 at p. 53:3-18; Doc. 54 at p.46:14-18. Defendants' expert, Steve Ijames, affirmed that it was reasonable for an officer possessing the knowledge that Deputy Burgess had to take Ramirez down. *See* Doc. 73.

conviction, it is not necessarily tantamount to an admission of factual guilt." *United States v. McGill*, 2009 WL 961142, 6 (S.D. Fla. April 8, 2009) (quoting *United States v. Poellnitz*, 372 F.3d 562, 566 (3d Cir. 2004) (citing *United States v. Wyatt*, 762 F.2d 908, 911 (11th Cir. 1985)). A *nolo contendre* plea might bar an action for malicious prosecution, false arrest, or false imprisonment, but it does not bar an action for excessive force. *See, e.g., Rivera v. City of Tampa,* Case No: 8:10-cv-2851-T-33EAJ, 2011 WL 4031137 (M.D. Fla. Sept. 12, 2011) (dismissing false imprisonment claim based on *nolo contendre* plea to disorderly conduct while allowing excessive force claim to go forward); *Heck v. Humphrey,* 512 U.S. 477, 486 (1994) ("the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that **necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement**, just as it has always applied to actions for malicious prosecution")(emphasis added).

Furthermore, Mr. Ramirez's *nolo contendre* plea does not necessarily establish that he intentionally spit the cigarette at Deputy Burgess. Mr. Ramirez pleaded *nolo contendre* to charges of resisting an officer without violence and battery on a law enforcement officer. *See* Doc. 59 at p. 11-16. By definition, a conviction for resisting an officer without violence does not implicate a use of physical force or violence. While the charge of battery on a law enforcement officer may suggest the possibility of physical force or violence, it is not conclusive. In *Hearns v. State*, 961 So. 2d 211 (Fla. 2007), the Florida Supreme Court determined that, because the mere touching of a law enforcement officer can support a conviction for battery on a law enforcement officer, the offense of battery on a law enforcement officer does not necessarily involve the use or threat of physical force or violence. *See Santiago v. State*, 76 So. 3d 1027, 1030 (Fla. 3d DCA 2011) (citing *Acosta v. State,* 982 So. 2d 87 (Fla. 3d DCA 2008)). Thus, Mr. Ramirez's convictions are not necessarily

based on any use of physical force or violence toward Deputy Burgess and do not automatically justify the use of force here.

Notwithstanding the dispute regarding whether Ramirez intentionally spit the cigarette at Deputy Burgess, it is undisputed that Mr. Ramirez's hands were either in the air or being handcuffed during his entire encounter with the deputies. It is undisputed that Mr. Ramirez complied with each of the deputies' directions – including spitting out the cigarette. Mr. Ramirez never threatened the deputies – verbally or physically. Viewing the facts in the light most favorable to the Plaintiff, the cigarette grazed the sleeve of Deputy Burgess' uniform. Deputy Burgess was not injured by the cigarette and there is no evidence that this action amounted to a level of resistance that made breaking Mr. Ramirez's leg reasonable – particularly in light of the fact that it was Deputy Burgess who instructed Mr. Ramirez to spit out the cigarette in the first place.

**IV.    Counts IV and VI: Tort Claims against Deputy Burgess**

Deputy Burgess argues that these claims should be dismissed because he used reasonable force in effecting the arrest of Mr. Ramirez. As discussed above, Plaintiff Carlos Ramirez has presented sufficient evidence of excessive force to create a genuine issue of material fact. Thus, Deputy Burgess' argument for summary judgment on the tort claims fails.

**V.    Counts III and V: Tort Claims Against Sheriff Judd**

In Counts III and V Plaintiff asserts claims for assault and battery, respectively, against Sheriff Judd. Defendants argue that Sheriff Judd is entitled to summary judgment on these claims because Deputy Burgess is entitled to summary judgment on the claims against him. *See* Doc. 47 at p. 24-25. However, as discussed above, this Court disagrees that Deputy Burgess is entitled to summary judgment on the claims against him. Genuine issues of material fact regarding the use of

12

force preclude the entry of summary judgment in favor of Deputy Burgess. Thus, the Court cannot grant summary judgment to Sheriff Judd on the basis of this argument.

**VI.      Counts VIII and IX: Loss of Consortium Against Sheriff Judd and Deputy Burgess**

Plaintiff Jasmaine Rodriguez Ramirez asserts loss of consortium claims against both Sheriff Judd and Deputy Burgess. Just as with the tort claims, Deputy Burgess' motion for summary judgment on the loss of consortium claims must be denied because Plaintiff has presented sufficient evidence of unreasonable force to create a genuine issue of material fact. The loss of consortium claim against Sheriff Judd, in turn, cannot be disposed of on summary judgment either because it relies on the claim against Deputy Burgess.

Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 47) is DENIED. A telephonic status conference to reset the trial date will be scheduled by separate order.

**DONE AND ORDERED** in Tampa, Florida on February 6, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

13